IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JACKIE C. HOLMES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:11-CV-2605-AKK |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Jackie C. Holmes brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Title II disability benefits. Holmes timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Act. Based on the court's review of the record and the briefs submitted by the parties, the decision of the Commissioner is due to be affirmed.

## I.  STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)–(f). The Commissioner must determine in sequence:

      (1)    whether the claimant is currently employed;

      (2)    whether she has a severe impairment;

      (3)    whether her impairment meets or equals one listed by the Secretary;

      (4)    whether the claimant can perform her past work; and

>   (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 988 F.2d at 477; *accord Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the present case, Holmes is seeking Title II disability insurance benefits alleging disibility beginning April 6, 1999. R. 21. Based on Holmes' earnings records, she has sufficient quarters of coverage to remain insured through September 30, 2000. *Id.* Therefore, Holmes must establish that she became disabled on or before September 30, 2000. *See* 42 U.S.C. § 423(d)(1)(A); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). Because Holmes filed her application after her date last insured ("DLI"), she must also establish that she was continuously disabled until one year prior to September 11, 2008, the date she filed her application. *See Wilson*, 284 F.3d at 1226.

The ALJ determined Holmes met the first test, but concluded she did not have a severe impairment through September 30, 2000. Therefore, he found Holmes was not disabled within the meaning of the Act.

## II. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end, this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Even if the court finds that the preponderance of the evidence is against the Commissioner's decision, the court must affirm the Commissioner's decision if it is supported by substantial evidence. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

## III.  DISCUSSION

Holmes raises two points of error: (1) that the ALJ erred in finding she did not suffer from a severe impairment prior to her DLI, doc. 7 at 21, and (2) the ALJ improperly rejected the opinion of Dr. James Hoover, *id.* As shown below, both contentions miss the mark.

**A.  The ALJ did not err in finding that Holmes did not suffer from a severe impairment**

To qualify as disabled, Holmes must have an impairment, or combination of impairments, that is severe. A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 1520(c). Holmes failed to make this showing.

At her ALJ hearing, Holmes testified she has had severe diarrhea since 1979, and that in 1999 "the severe diarrhea was extensive." R. 46. She also testified she had severe abdominal pain in 1999 that she rated as an eight, on a scale of one to ten, while on medications. R. 47. After discussing the medical evidence prior to Holmes' DLI, the ALJ concluded Holmes had medically determinable impairments that could reasonably be expected to cause some symptoms. R. 27. However, the ALJ determined that Holmes statements regarding her pain were not credible to show she had a severe impairment prior to her DLI. *Id.* He found the evidence in the record did not support Holmes'

allegations of disabling symptoms during the period under consideration. *Id.* The ALJ also found Holmes' daily activities prior to her DLI were inconsistent with her allegations of total disability, and that during the period under consideration, Holmes was able to "perform independent activities of daily living" and "took care of her own personal needs, grooming and hygiene." *Id.* The substantial evidence supports the ALJ's decision.

The medical records show that Holmes obtained sporadic treatment for abdominal pain and other gastric problems prior to her DLI. In his discussion of the medical records, the ALJ noted Holmes reported she continued to exercise an hour daily and had no significant complaints of colitis when she visited Dr. Willard W. Mosier on February 25, 1997. R. 26, 541. The record shows next that on January 22, 1998, Holmes visited Dr. Thomas G. Preston with complaints of back pain, abdominal pain, and nausea. R. 842. Holmes reported occasional mild heartburn and indigestion, but denied vomiting or changes in bowel habits. R. 843. Dr. Preston's diagnostic impression noted a "remote history of colitis." R. 844. Dr. Preston suspected Holmes might have gallstones. R. 842. Further testing showed the presence of gallstones, and Holmes underwent a laparoscopic cholecystectomy on January 28, 1998. R. 566–68.

On April 6, 1999, Holmes visited for the first time Dr. James Hoover, an internal medicine specialist, for chest pain and palpitations. R. 508–10. Prior to visiting Dr. Hoover, Holmes sought treatment in the ER after she became light-headed while doing aerobics. R. 508. Dr. Hoover noted Holmes had minimal symptoms from mitral valve prolapse, probably because she "exercises routinely" and was "very diligent about that." *Id.* Dr. Hoover also noted Holmes' past medical history included "considerable upper GI discomfort with belching and indigestion," and that Holmes reported continued "upper abdominal discomfort and dyspepsia that sounds like fairly typical gastritis or ulcer." *Id.* Dr. Hoover assessed Holmes with chronic upper gastrointestinal discomfort and dyspepsia, and a history of lower abdominal discomfort, which he found suggestive of irritable bowel syndrome. R. 509. Dr. Hoover prescribed medications to treat the upper gastrointestinal problems and indicated that he would refer Holmes to a gastroenterologist if she did not improve. *Id.* Thereafter, on April 12, 1999, Holmes called Dr. Hoover's office to report a vomiting spell and that she had a very sharp pain in the pit of her stomach. R. 510. Dr. Hoover prescribed medication and referred Holmes to a gastroenterologist. *Id.*

Three days later, Holmes saw Dr. Kenneth M. Sigman, a gastroenterologist. R. 522–23. Dr. Sigman suspected Holmes might have irritable bowel syndrome

and made adjustments in Holmes' medication. R. 523. Although Dr. Sigman indicated for Holmes to follow-up with him in 3 to 4 weeks for a graded exercise test,[1] *id.*, there are no further treatment notes from Dr. Sigman prior to Holmes' DLI.

The next medical entry occurred on May 25, 1999, when Holmes visited Dr. Mosier.[2] R. 539. Dr. Mosier noted Holmes had "no complaints of significant flair of colitis" since her last visit.[3] *Id.* The next day, Holmes failed to return to Dr. Hoover for her follow-up visit. R. 511. The final treatment note from Dr. Hoover prior to Holmes' DLI documents a phone call from Holmes complaining of body aches and nausea. R. 975. Dr. Hoover prescribed Tamiflu. *Id.* The next treatment note in the record from Dr. Hoover is dated June 18, 2002, which was after Holmes' DLI. R. 677–79. At that time, Holmes complained of daily nausea for almost a year. R. 677. The note states Holmes reported "some intermittent diarrhea now, but it's not a major problem." *Id.* The diagnostic assessment

---

[1] Dr. Hoover planned to do a graded exercise test on Holmes because of her recent episode of chest pain. R. 509.

[2] The ALJ incorrectly identified this treatment note as a follow-up visit to Dr. Sigman. R. 26, 539.

[3] The court assumes that Dr. Mosier was referring to Holmes' last visit to his office on February 25, 1997, since he and Dr. Sigman are not in the same practice.

included daily nausea and a history of ulcerative colitis with no recent follow-up. R. 679.

The medical evidence discussed by the ALJ shows Holmes sought only sporadic treatment for her gastrointestinal problems prior to her DLI. That evidence shows Holmes did not follow-up with Drs. Hoover or Sigman after her initial visits. In discussing Dr. Hoover's treatment notes, the ALJ observed Holmes reported to Dr. Hoover that she exercised diligently, helped her husband with his business, and took care of her in-laws, and the ALJ specifically referred to those activities in finding Holmes' testimony was not credible.[4] R. 26–27, 509. The ALJ's findings are consistent with the medical evidence which shows that Holmes reported to Dr. Mosier on May 25, 1999, that she had not had a significant flair of her colitis since her last visit, and that Holmes did not seek treatment for significant gastrointestinal distress from April 1999 until after

---

[4] In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If an ALJ discredits a claimant's subjective complaints, he must give "explicit and adequate reasons" for his decision. *See id.* at 1561-62. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562.

September 30, 2000, her DLI. Therefore, the ALJ's finding that the evidence does not show Holmes had a severe impairment prior to her DLI is reasonable and supported by substantial evidence.

**B.     The ALJ did not improperly reject the opinions of the plaintiff's treating physician**

Holmes' second argument on appeal is that the ALJ improperly rejected the opinions of Dr. Hoover expressed in letters written in 2009 and 2010. Doc. 7 at 21. On July 27, 2009, Dr. Hoover wrote a letter stating he had treated Holmes since 1999, that Holmes "gave a history at that time of considerable upper GI discomfort with belching and indigestion, waking up with intermittent epigastric pain in the middle of the night and being on medication for years for this. She also had some intermittent diarrhea," and that Holmes "has continued to have diarrhea probably exacerbated by the upper GI issues. She has also had multiple other medical problems which contribute to her being disabled at this point." R. 637. The letter concludes: "However, the one issue that has been present throughout the 1990's has been the GI issue that really progressed to the point where she could not eat any significant amount without having significant problems." *Id.*  Dr. Hoover wrote a second letter on July 13, 2010, in which he states:

> This letter is to update the letter sent to you on July 27, 2009. At that time I stated that Ms. Holmes had been a patient of mine since 1999 and had multiple GI issues that really caused her to be unable to work for some time prior to me seeing her.

R. 1055. In addition, Dr. Hoover also completed physical capacity and pain assessment forms on June 9, 2010, and November 8, 2010. R. 960–65, 1202–09.

Holmes contends that Dr. Hoover's letters establish her disability, and asserts that the ALJ erred when he gave Dr. Hoover's letters little weight. According to the ALJ:

> Little weight are given to these opinions because they are internally inconsistent with the medical evidence during the period under consideration. Specifically, in April 1999, Dr. Hoover diagnosed the claimant with chronic upper gastrointestinal discomfort and dyspepsia as well as history of lower abdominal discomfort, suggestive of irritable bowel syndrome, and adjusted her medication. Moreover, Dr. Hoover noted the claimant exercised daily, helped her husband with his business, and took care of her in-laws. (Exhibits 10F, 22F and 23F). Further, in May [1999], Dr. Sigman[5] noted that the claimant was stable with no complaints of colitis flair (Exhibit 10F). While Dr. Hoover may be sympathetic to the claimant's plight, the evidence does not show that the claimant was precluded from work through the date last insured.

R. 27 (alteration and footnote added). The ALJ's articulated reasons constitute "good cause" for giving Dr. Hoover's opinions little weight.[6] Dr. Hoover's

---

[5] This treatment note was actually from Dr. Mosier. R. 539.

[6] In considering whether an ALJ has properly rejected a treating physician's opinion, "[t]he law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the evidence does

continue...

retrospective opinions about Holmes' condition prior to her DLI are indeed inconsistent with his treatment notes from 1999, which show Holmes remained active and did not seek follow-up care for her gastrointestinal problems. Moreover, Dr. Hoover's opinions are not bolstered by other medical evidence prior to Holmes' DLI. In fact, the evidence shows that Holmes failed to follow-up with Dr. Sigman for treatment of her upper gastrointestinal problems, which belies Dr. Hoover's opinions regarding the purported severity of Holmes' condition. In short, the lack of treatment for significant gastrointestinal problems between April 1999 and September 30, 2000, also indicates Holmes' gastrointestinal problems were not severe during the year and one-half immediately prior to her DLI. Therefore, substantial evidence supports the ALJ's decision to give little weight to Dr. Hoover's opinions.

## IV.  CONCLUSION

Substantial evidence supports the ALJ's finding that Holmes did not have a severe impairment prior to her DLI. The ALJ had good cause for giving Dr. Hoover's opinions about Holmes' ability to work prior to her DLI little weight. His decision to give Dr. Hoover's opinions little weight was supported by

---

⁶ ...continue
not bolster the treating physician's opinion, a contrary finding is supported by the evidence, or the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id.*

substantial evidence and in accord with proper legal standards. Accordingly, the decision of the Commissioner must be affirmed. An appropriate order will be entered contemporaneously herewith.

DONE this 24th day of January, 2014.

                                        _____
                                             **ABDUL K. KALLON**
                                    UNITED STATES DISTRICT JUDGE